IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL RIEG,                                    )
                          Plaintiff,            )
                                                )
      -vs-                                      )          Civil Action No. 15-1182
                                                )
CAROLYN W. COLVIN,                              )
COMMISSIONER OF SOCIAL SECURITY,                )
                                                )
                          Defendant.            )

## OPINION and ORDER OF COURT

AMBROSE, Senior District Judge

## SYNOPSIS

Pending before the court are Cross-Motions for Summary Judgment. (ECF Nos. 7, 9). Both parties have filed Briefs in Support of their respective Motions (ECF Nos. 8, 10); Plaintiff filed a Reply Brief (ECF No. 11); and the motions are ripe for disposition. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Plaintiff's Motion for Summary Judgment (ECF No. 7) and denying Defendant's Motion for Summary Judgment. (ECF No. 9).

## I.      BACKGROUND

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Rieg claims disability due to a gunshot in his chest, post-traumatic stress disorder ("PTSD"), anxiety, depression, sleep problems, gastro reflux, back, hip, chest and shoulder pain, hearing loss, difficulty breathing and anger control problems.  A previous application for DIB was denied on July 21, 2009 and Plaintiff

1

conceded that there is no basis to reopen that decision. Plaintiff's earnings record provided coverage through December 31, 2011. Thus, the time period at issue in this case is September 2009 through December 2011.

Rieg was born on July 16, 1965 and was 44-47 years old in the relevant time period. He is a college graduate and previously worked as a police officer, firearms instructor, SWAT team member and field training officer. On May 26, 2002, while responding to a domestic dispute, Rieg was shot in the chest and knocked backwards over a railing to the ground. Fortunately, he was wearing body armor and was able to return fire to bring down his assailant. Rieg suffered contusions, a permanent scar where the bullet/vest penetrated between his ribs, and partial hearing loss in his left ear. He remained in a hospital overnight and returned to work several months later. Rieg worked until December 28, 2005, when he was placed on leave due to poor functioning and increasing irritability. Rieg experienced persistent, pervasive recollections of the shooting incident. Eventually, he received workers compensation and a disability pension.

Rieg began treating with Dr. Lawrence Haddad for individual psychotherapy in February 2006. During 2009-2011, Rieg was seen by Dr. Haddad once every several months. R. 257. In May 2012 (after the time period at issue in this case), Rieg "experienced serious regression" and treatments with Dr. Haddad increased to several times per month. *Id*.

In 2010, Rieg went to his primary care physician, Dr. Vernino, complaining of chest and abdominal pains. He was diagnosed with gastritis. The treatment notes reflect that his PTSD had resolved after he retired from the police force and that Rieg's

occupation was owner of a golf company. R. 507.[1] No psychological issues were noted by Dr. Vernino.

On October 23, 2012, Dr. Haddad checked the box on a Medical Opinion Re Ability to Work form that Rieg would miss more than three days of work per month, albeit without explanation. R. 266. On December 5, 2013, Dr. Haddad submitted a post-hearing letter to the ALJ, in which he opined that during 2009-2011, there was clear evidence that Rieg had PTSD, including sudden outbursts of anger. R. 525. Dr. Haddad also stated that "there were indeed episodes of decompensation" during this time period, which made it impossible for Rieg to perform any work. Dr. Haddad opined that these floodings of PTSD symptoms would cause Rieg to be unable to work at least one day per week and/or be off-task for 15% per day. R. 525. On December 10, 2013, Dr. Haddad submitted opinions that Rieg satisfied Listings 12.04 and 12.06, although no time period was specified. R. 526-532. Dr. Haddad did not supply his actual treatment notes to Plaintiff's attorney. The ALJ agreed to keep the record open for a week after the hearing to allow Plaintiff to submit those notes, R. 36, but they were never obtained.

Administrative Law Judge ("ALJ") William Kenworthy held a hearing on December 3, 2013, at which Plaintiff and Vocational Expert ("VE") Charles Cohen testified. Rieg testified that during the 2009-2011 timeframe, he would zone out after his PTSD symptoms were triggered (such as hearing a report of a police shooting on the radio). Some of these "zone outs" lasted up to two or three days, in which he would get no sleep at all and then take a half a dozen over-the-counter sleeping pills and sleep

---

[1] Rieg argues that this reference is wrong and that he merely helped to coordinate the scheduling of a golf league. Plaintiff's Brief at 10-11. *But see* R. 334, 344 (referencing golf company).

for twenty straight hours.  R. 50-52.  Rieg explained at the hearing that he was having to adjust his sleep patterns much more frequently than a year ago.  R. 58-59.  Rieg explained that his symptoms were getting worse through the 2009-2011 timeframe; that he might have been able to work a part-time schedule; but his attendance would be erratic.  R. 60-61.  The VE testified that there were a variety of medium-exertion jobs that could be performed by a person with the Residual Functional Capacity ("RFC") set forth by the ALJ, such as night cleaning, night stocking, and inspection jobs.  In response to questions from Plaintiff's attorney, the VE opined that chronic absences in excess of once per month would not be tolerated.  R. at 67.

In a written opinion dated January 8, 2014, the ALJ held that Plaintiff was not disabled under the Act. R. 17-27.  The ALJ found that Rieg's PTSD was a severe impairment that did not rise to the level of a listed impairment.  The ALJ noted that Rieg had no restrictions in his activities of daily living, other than "road rage" while driving a car, and that he enjoyed fly fishing.  R. 22. The ALJ summarized Rieg's testimony regarding his symptoms (including his sleep problems) and concluded that they were not entirely credible for the 2009-2011 time period because there was no evidence of contemporaneous complaints in the record.  R. 24. The ALJ noted that Rieg saw Dr. Haddad only at intervals of a few months; was not taking any psychotropic medications; and had told Dr. Vernino in 2010 that his PTSD symptoms had resolved after he left the police force.  R. 24.  The ALJ then recited his RFC, which reflected that Rieg was capable of performing medium exertion work that did not involve close interactions with co-workers; close supervision; interaction with the general public; frequent changes in work assignments; a rapid production line pace or other work-related stress; and

required only simple decision-making.  R. 23.  Although Rieg was unable to return to his past work as a policeman, the VE testified that a person with these limitations could perform numerous medium-exertional, unskilled jobs.  Accordingly, the ALJ found that Rieg was not disabled.

After exhausting all administrative remedies, Plaintiff filed this action in this Court. The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 7, 9). The issues are now ripe for review.

## II.    LEGAL ANALYSIS

### A.    Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent his from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

### B.    Plaintiff's Contentions

Plaintiff's original brief appeared to challenge both steps 2 and 5 of the analysis. However, in the reply brief, Plaintiff clarifies that he challenges only the RFC assessment and step 5 of the ALJ's analysis. Rieg argues that the ALJ's findings regarding his ability to engage in regular attendance at work are not supported by substantial evidence or explained with the requisite specificity. Notably, Plaintiff does not challenge the ALJ's decision to accord "no weight" to the opinions of Dr. Haddad.

## C. Discussion

As recently explained in *Burrows v. Colvin*, 2015 WL 4662463, at *7 (W.D. Pa. Aug. 6, 2015), an ALJ must base his RFC assessment on all of the relevant evidence of record. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Accord Todaro v. Colvin*, 2015 WL 791420 at *3–5 (W.D. Pa. Feb.25, 2015). In his opinion, the ALJ must provide sufficient explanation of his final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). The ALJ's decision must allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ's decision should allow the reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored").

In this case, the ALJ found that Rieg had PTSD which persisted for years, including throughout the relevant time period, and acknowledged Rieg's testimony regarding sleep problems. Yet, as in *Burrows* and *Todaro*, the ALJ failed to discuss in any meaningful way the impact of Rieg's severe and non-severe impairments on his

ability to meet the absenteeism requirements of gainful employment.  Thus, this case must similarly be remanded for further consideration.  *See also Diaz v. Comm'r of Soc. Sec.*, 2013 WL 5354244, at *6 (D.N.J. Sept. 24, 2013) (remanding with instruction for ALJ to pay specific attention to the extent to which PTSD will impact claimant's ability to attend work).

The ALJ's written decision primarily focused on explaining why he gave no weight to Rieg's long-time treating physician, Dr. Haddad.  The ALJ properly gave specific reasons based on the record for rejecting Dr. Haddad's opinions.  The ALJ also explained, generally, why he rejected Rieg's hearing testimony about his limitations as not entirely credible.  However, the ALJ failed to explain how he developed Rieg's RFC. In particular, the ALJ did not discuss the impact of Rieg's sleep problems on his ability to regularly attend work and failed to address the VE's testimony on that issue.  This reviewing court is unable to determine whether the ALJ disbelieved Rieg's testimony about the frequency and/or severity of his sleep problems, or alternatively, concluded that there are jobs that Rieg could have performed despite those sleep problems.  *See Fargnoli*, 247 F.3d at 43 (remanding because ALJ failed to explain reasons for discounting all pertinent evidence in making RFC determination).

## III.    **CONCLUSION**

In accordance with the foregoing, the ALJ's decision was not supported by substantial evidence, and will be remanded for further consideration in accordance with this Opinion.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL RIEG,                                    )
                    Plaintiff,                  )
                                                )
        -vs-                                    )        Civil Action No. 15-1182
                                                )
CAROLYN W. COLVIN,                              )
COMMISSIONER OF SOCIAL SECURITY,                )
                                                )
        Defendant.                              )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 18th day of November, 2016, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion (ECF No. 7) is **GRANTED** to the extent that this case is remanded to the Commissioner of Social Security for further proceedings.  Defendant's Motion (ECF No. 9) is **DENIED**.


                                        BY THE COURT:
                                        s/ Donetta W. Ambrose
                                        Donetta W. Ambrose
                                        United States Senior District Judge